The last case called for oral argument is People v. Reid. Justice, may I say something? Sure. Before you all leave, I said this yesterday and I want to say it to this new group. I think that the court appreciates the fact that you all are now getting into us the electronic record briefs. I know the clerk asks for them. And when we first started asking, the appellate public defender and the appellate state prosecutor were not getting them to us. But I see them coming in now. And I know on behalf of myself, and I think Justice Chapman feels the same way and Justice Goldenhurst, we really appreciate receiving those electronic briefs. It's tough for us to work in PDF. So the public defender keeps sending them in PDF form. If you could possibly send them in word, we would greatly appreciate them. I can't be speaking in your honor. I apologize for the delay. No, no, no, it's not that. It's that we're getting them and we're greatly appreciative that we're getting them at all because the civil attorneys are kind of paying attention. But I've noticed recently that you all are really helping us out. So I want to thank you for that. So thank you. Thank you. Oh, Ms. Shanahan's here today. I mistakenly called one of your colleagues Ms. Shanahan. This is the real Ms. Shanahan. This is the real Ms. Shanahan. That's really up here today. Okay. Counsel. Whenever you're ready. Good afternoon. Good afternoon. May it please the Court, Counsel. My name is Alexander Munches. I'm with the Office of the State Appellate Senator and I represent Mr. Kevin J. Reed. The state's theory of Mr. Reed's guilt may be boiled down to a single word, proximity. There are no evidences to these three murders. There's no video, no confession. Any opportunity for Mr. Reed to commit these crimes is limited, if not impossible, and the state never identified a motive. The state has set out a fine since the proximity of physical evidence to Mr. Reed proved his guilt. However, not all physical evidence was equally available to the defense. In addition, no instructions were given to the jury, permitting it to make an adverse inference against the state. This is critical because only two weeks after arresting Mr. Reed for murder, the state released for destruction the very car it later argued contained, quote, powerful evidence against him. I'd like to focus on these two issues today, the destruction of the car and the absence of a critical jury instruction. Some backgrounds in order. The state had charged Mr. Reed with three murders, Annequiet Parker, her unborn child, and her four-year-old cousin, Sir McDonough Jr. The state alleged those murders occurred on November 6th. On November 8th, the family filed a missing persons report. Notably, Ms. Parker was the pregnant girlfriend of a junk dealer who initially suspected his own cousin of foul play. From November 8th through mid-December, a lion's share of the state's investigation occurred. On November 8th, the state found Parker's car. Some of her blood was on the tire. Some of Tony's blood was inside the car. And a trace amount of DNA from Mr. Reed was on the trunk switch. The state interrogated Mr. Reed that day. Mr. Reed admitted that Ms. Parker was his junk dealer and that he had been in her car. The state later searched the adjoining property to his former property, and out on those hills it found a jean jacket which yielded a partial DNA profile of Parker. It also found a sleeping bag that had numerous DNA profiles. One profile matched Parker. Another was a, quote, relatively common profile, and Mr. Reed could not be excluded from that relatively common profile. The state then arrested Mr. Reed at the start of December. They arrested him for murder. And to accept that, the state released Parker's car for destruction. The investigation, the searching, basically stopped there for about two years. November 2007, someone had bought this adjoining property, and a cistern was discovered under the ground. The property owner reported that to the Illinois State Police. Four months went by, and on March 2008, the state police looked into the cistern and discovered human remains. That same day, they arrested Mr. Reed and his brother, Scott. Then a pretrial litigation dragged out from 2008 to 2014. The critical issue between the two parties was the destruction of Parker's car. How long is a police supposed to hold the evidence? Without a court order, indefinitely. Now, the state's duty to preserve this evidence, this evidence that has biological material on it in particular, arises with its investigation. But the car had been thoroughly examined with the technology that was available at the time, correct? Incorrect. The car had been examined. Not all tests had been done. Indeed, this was part of the litigation. This is the touch DNA you're talking about? Exactly right. Yeah. How available was that? Well, the state used it in March. They used touch DNA testing on the sleeping bag at that time. Through that, touch DNA testing on the sleeping bag. But that was in March, a couple years later. No, no, no. It was several months after they found the sleeping bag. Several months. Okay. And the forensics were testified that touch DNA testing was widely available during that time. Widely available? Yes. So, this testing did not occur. So, the destruction of Parker's car... You said that your client was with the car. I was prejudiced. I was prejudiced. I mean, he gets to argue that. Right? Sure. He gets to argue that, look, there's no connection to me with the car because touch DNA wasn't done or the car was destroyed. So, if the testing is done and, indeed, it is negative, I mean, the adverse influence is already with him. What does he gain by having the car? So, there's... I understand your question to be reaching to the point, was there comparable evidence? And I think that general testimony about the nature of this sort of unique evidence is no substitute. What do you mean? I think what she's saying is that it seems like having the car would only have hurt him because if they found his touch DNA, then it would have inculcated him. Sure, and if they found someone else's DNA, he'd be able to argue that someone else was the murderer. They also, though, did find his DNA on the trunk where she... On the trunk release switch. And he had admitted that he'd been in her car. She was his drug dealer and he said that... We don't know whether or not they were in the trunk, though, at some point. Oh, no, the trunk release switch, not in the trunk. Oh, the trunk release switch. Sorry, yes. That would drive her side door. Okay. So, if he admitted in her... You're right, he did admit he was in the car. In that day, correct? No, he had not been in the car that day. Several days before, he had sat in the back of the car. He had also sort of... Several days before, okay. But he said that, I believe the testimony is that on the day, he did not go into her car. But he was with her on that day. He had seen her, yes. He basically shooed her away from the property. So, I still don't understand what prejudice is to him in not retaining the car. So, the prejudice is it's a due process violation. If there's evidence that it's potentially useful and the state destroys that evidence in bad faith, this is a due process violation. But what's the bad faith? The bad faith, sure. So, we look at bad faith in this way. Bad faith depends on the police's knowledge of the exculpatory value the time the evidence is lost or destroyed. And we also look at the police's normal practice and procedure. How do you know this is potentially exculpatory evidence? No, potentially useful evidence. So, the parties all but agreed this is potentially useful evidence. Because it showed somebody else. Exactly. The untested DNA and the car itself lacked any of Mr. Lee's fingerprints. And the state, in its brief, agrees that that apparently exculpates Mr. Lee. So, we have, you know, potentially useful evidence. There's a remarkably low bar. The difficulty in the argument is... There's a low bar as to the bad faith? No, no. This is the key of the argument. This is much harder to satisfy, the bad faith. So, in the bad faith, where we start the point of this is really the state's acknowledgement that, or basically the state's failure on appeal to even defend the decision to destroy this car so quickly. This car was released for destruction just two weeks after arresting Mr. Reed. Remind this court that the police are actively investigating a recent serious crime. The state suggests that the release of the car may have been unwise. I suggest it was outrageous. What we know about the evidence... Did we know they were dead yet? So, Mr. Reed had been arrested for murder. Yeah, but there were no bodies found. I mean... The police believe they had a probable cause to arrest him for murder. But let him go. Sure, but the state ultimately declined to prosecute the police. Because there wasn't enough evidence. So, at best, what we have here is possible kidnapping or possible murder in the state, simply... Or missing persons. ...released for destruction as evidence. Yeah, but missing persons, too. Yes. So, the question becomes, what is the bad faith? Yes, the bad faith is some of the evidence in the car was ambiguous regarding skill. They had not exhaustively tested the evidence at all, even though that testing was available. And they used that testing on other evidence. In addition, the state didn't follow its own procedures under an ISP or under the statute. And the state never sought a judicial order, though capable, quite capable. So, a judicial order for what? Sorry? A judicial order for what? To destroy the evidence. To release it for destruction. The state had permission to hold on to this for an indefinite amount of time. It was dismantled and destroyed at the state two weeks after the arrest. Released it for destruction. Well, there was a lien. No, they didn't release it for destruction. They released it back to the lien holder. Yes. Who sold it. Who I think was Kenny Colts. Was. That's an inside joke. Okay. Anyway, you're too young. Just to circle back. The bad faith is shown by the unwise decision to release it remarkably quickly, the failure to follow its duty under the law, and the use of testing, scientific testing, on some evidence, the selective use of it. But don't you have to show something beyond negligence? All those three things could easily have just been kind of a bungled investigation. Bad faith is something greater than that. I don't believe bad faith is something greater than that. I believe this shows exactly bad faith. The decision to rapidly release this car during an ongoing investigation shows a willingness to prosecute one person, one person alone, and to subvert the criminal procedure at that moment. Thank you, counsel. Thank you. Counsel? Excuse me. May I please start? Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Before starting on my argument, I'd like to disagree with two points that our defendants made. First of all, at the time this case was first investigated, touch DNA was available, but I do disagree that it was widely available or widely used. I guess would be a better way to put it. And then the second thing is the test is not whether this evidence would be potentially useful. It's whether it would be potentially exculpatory. Now, there's really three things that we need to look at here. Was the exculpatory value apparent before the evidence was destroyed? Was competent, excuse me, was comparable evidence available? And I think most importantly, did the police act in bad faith? And specific to this court, or to this case, does failure to follow normal practice establish bad faith? And did the police fail to follow normal practice? Obviously, this case is largely controlled by the United States Supreme Court cases of Trombetta and Youngblood and Veracruz. Now, as far as whether the exculpatory value was apparent before the evidence was destroyed, the police went over this car very thoroughly. I wrote down in my notes here three times, but then I got to thinking as I reviewed them, it may have been four. They not only fingerprinted it and found the DNA testing of the blood that was found, but they actually did the superglue testing for fingerprints, which covers everything. And to the defendant's benefit, none of his fingerprints were found in the car. They took, as I said, they took samples of his blood, or excuse me, they took samples of the blood, they DNA tested it, they photographed everything, they collected and kept all the items that they found in the car. And Agent Cook testified that he did not do touch DNA. Now, in Youngblood, the United States Supreme Court strongly disagrees that the new process clause is violated with the police failure to use a particular investigatory tool. Now, so that basically means that if Cook had not collected blood, if he hadn't tested for fingerprints, but to say, well, I did this kind of DNA test, but I did not use this relatively new touch DNA test, that's a particular investigative tool. It seems like the rationale would be that it kind of flies in the face of bad faith, that you're doing everything you can on all the other fronts and then don't do one. I mean, why would you deliberately then do all these other thorough investigations and only look one and then be found to be in bad faith? That's my thought on that. Well, first of all, I'm sure there's always something you can find that an officer didn't do. I'm sure they are. And I do strongly disagree with counsel for the defendant who says negligence is bad faith. And I think the United States Supreme Court disagrees with that too. I'd like to list some of the things that are considered bad faith. A calculated effort to circumvent disclosure requirements. Official animus. Conscious effort to suppress exculpatory evidence. All three of those came from Trombetta. Naivete. Malicious intent. Sinister motive. Furtive design. Dishonesty. Ill will. Now, I think that there is no doubt that negligence is not bad faith. Thank you, Your Honor. Negligence is not bad faith. Ms. Shanahan, do we even get to negligence in this case? Well, I would argue no. In fact, I argue in my brief that there's nothing that indicates that they didn't follow normal procedure. First of all, this was not a murder case. They did briefly hold the defendant. I think there's even a little bit of a question as to whether he was held on the murder charge because there is some language that indicates that on and about pages 104 through 106, it says he was interrogated for, taken to jail, turned loose shortly thereafter, was not charged with murder. And it also goes on to say, I mean, it indicates to me that he may have been jailed on the basis of a petition to revoke in a separate robbery case and was re-cogged, the records were, the next day. So I don't think it's even completely clear that he was arrested for this murder. But in any case, he was never charged with murder. And I listed in my brief the number of times that different officers all said this was a missing persons case. Until they found those bodies, this was a missing persons case. And the statute in question here does not apply to missing persons case. It applies to sexual assault, sexual abuse, and murder. And then second of all, as far as the state police operating procedures, first of all, that was never actually argued at the trial or in the motions. If counsel for the defendant did disclose it in discovery, but he never used that as the basis for his motion to dismiss, nor did he present it at trial. But in any case, the officers that did the examinations, Officer Cook, he was an Illinois State Police officer. But again, the record very clearly says that at the time of his disappearance, this was an East St. Louis, Madison County case. Even when they were examining the court, Cook himself said that this was an East St. Louis case and that he turned over all evidence to East St. Louis or Madison County and that they told him what to collect. So he's just kind of the person who's being told what to do. So it's not an Illinois State Police case. At least it didn't, I think. Eventually, once they found the bodies, I think it may have become an Illinois State Police. But at the time the search was done, it wasn't a state police case. So certainly, state police operating procedures don't apply to East St. Louis or to Madison County. And they're the ones that actually even decided to get rid of the car. So I think those are the important things here that, as you say, there is no evidence that they didn't follow the procedure. But even if they didn't follow the procedure, there certainly is none of the evidence of bad faith. And in fact, I think Justice Blackmun in Youngblood, in his dissent, he concedes that under the majority opinion in Youngblood, there is no requirement that police comply with standard procedure in order to establish good faith. And he points out that if you don't comply with standard procedure, then you are negligent. And the court has said negligence is not enough. And there are several other cases cited by the state in its brief that says negligence is not enough. This doesn't even remotely reach bad faith. This was just one test that possibly could have been done that one officer didn't do. And everything else that was kept, the defendant had, as Justice Cates, I believe, pointed out, he had the opportunity to challenge the fact that you didn't test for touched DNA. And if you had, look what might have happened. And to put that – it actually worked to his benefit because of that. Thank you. Thank you. Thank you. Putting aside for the moment that this trial certainly did not work to my client's benefit, I'll say that if you look at the DVD of the 11-30-2005 interview, you will see Detective Cromer arrest my client for murder. So he was arrested for murder. At that point, the state had a duty to hold on to evidence. The state did not have a duty to perform a particular test. The state did not have a duty to do anything but just hold on to evidence. That was the state's only task at that moment. Yet two weeks after that arrest, the state released this car for destruction. And the state did that because it was done with this car. It had no more evidence to gather that it wanted to use to prosecute my client. But that's not the state's duty at that moment. The state must simply hold on to this evidence. Why? Because this case will come to trial, and whomever they choose to prosecute will need this evidence. They'll need their own expert to look at the state's analysis. They'll need their own expert to analyze this evidence. And at trial, the state and the defense will be in equal footing. They'll both be able to present their arguments and their evidence to the jury, and the jury itself will be able to decide and resolve these various weights and issues and credibilities. But that didn't happen in this case. The state swiftly released this car for destruction. In addition, Justice Cates, I know you suggested that the sort of confusion and destruction of evidence may have worked in my client's favor. As we argue in the briefs, my client was not allowed to use a critical jury instruction. It would help the jury know that they could confer this fact against the state. Now, the state had its theory in front of the jury. The state had all the instructions it wanted in front of the jury. But my client did not have this instruction in front of the jury. So, again, we started on the foot of this trial certainly did not work to the benefit of my client. The investigation didn't. The trial didn't. And we asked this court to take that seriously. The statute that you keep talking about, though, you're saying that just because your client was charged with murder, let's assume that. He's arrested for murder. He's not charged. He's arrested for murder. That in and of itself required under the statute that this car be held. That's not what the statute says. The statute says that any physical evidence in their possession or control that is reasonably likely to contain forensic evidence. Sure. In possession or control. Before a prosecution. Before a prosecution for an offense defined in Article 9. As soon as the police officers. So you're saying an arrest is a prosecution. No, I'm saying as soon as the police officers take that evidence under the possession or control. And that's usually with the investigation that this duty arises. The duty arises with the investigation. Not unless there's an offense that's involved in Article 9. Oh, murder. Not unless there's murder. You look at the November 30th, 2005 interrogation where they arrest my client. Detective Comer says you are under arrest for murder. Of who? Of Antquiet Parker, ground-born child of servant Tony Jr. I'll have to look it up. The duty to preserve this evidence arose with the investigation. That did not happen. Counters, we ask you to reverse and remand and at the new trial, direct the trial court, if defense requests it, to give the instruction they request on destruction of this evidence. Is there no further questions? I don't believe so. Thank you, counsel. Thank you. I appreciate the briefs and arguments. The counsel will take the case under advisement. There are no further oral arguments docketed before the court, so we're adjourned. All rise.